UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-175-GWU

ELIZABETH TARTER,                                                        PLAINTIFF,

VS.                                    **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.     Is the claimant currently engaged in substantial gainful activity?
       If yes, the claimant is not disabled.  If no, proceed to Step 2.
       See 20 C.F.R. 404.1520(b), 416.920(b).

2.     Does the claimant have any medically determinable physical
       or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
       claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.     Does the claimant have any severe impairment(s)--i.e., any
       impairment(s) significantly limiting the claimant's physical or
       mental ability to do basic work activities?  If yes, proceed to

1

07-175  Tarter

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

07-175  Tarter

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

07-175  Tarter

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

07-175  Tarter

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-175  Tarter

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions  .  .  .  or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist.

6

07-175  Tarter

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Elizabeth Tarter, was found by an Administrative Law Judge ("ALJ") to have "severe" impairments consisting of Buerger's disease,[1] peripheral vascular disease, hypertension, and a history of depression and anxiety.  (Tr. 19).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined Mrs. Tarter retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 22-5).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's work experience and educational background could perform any jobs if she were limited to "light" level exertion, could occasionally climb ladders or crawl, and had a "limited but satisfactory" ability to relate to coworkers, interact with

---

[1]Buerger's disease (thromboangiitis obliterans) is an inflammatory and abliterative disease of the blood vessels of the extremities, primarily the lower extremities, occurring chiefly in young men and leading to ischemia of the tissues and gangrene.  Dorland's Illustrated Medical Dictionary, 27th Ed., p. 1717.

supervisors, and maintain attention and concentration. (Tr. 661-2). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 662).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mrs. Tarter alleged disability due to depression, Buerger's disease, pain in her legs and right foot and an impending amputation of one of her toes. (Tr. 87-8). She testified at the subsequent administrative hearing that her right toe had been amputated since filing the application, and she had been treated for blood clotting since that time. (Tr. 651-2). A stent had been placed in her right leg, but she still had pain in her right foot. (Tr. 652-3). Her foot was extremely painful three times a week but she had other pain throughout the week. (Tr. 656). She also described depression and memory loss, and stated that a neurologist had told her that she needed surgery on her brain. (Tr. 654, 658). She declined to follow up because she did not want brain surgery. (Id.).

Medical records in the transcript showed a considerable history of medical treatment for circulatory problems which was diagnosed as Buerger's disease. (Tr. 204, 248). Eventually, gangrene in the right great toe resulted in two operations to amputate the right great toe in October, 2004. (Tr. 261, 274-7, 397). Subsequently,

a bilateral angiogram of the lower extremities showed an abrupt occlusion in an artery just above the right knee (Tr. 360-1), resulting in right iliac artery angioplasty and stent placement in January, 2005 (Tr. 363-4).  Although the plaintiff did well post-operatively, it was noted that she still had arterial disease at the ankle level which would be evaluated at a later stage.  (Tr. 367).  On February 1, 2005, the surgeon, Dr. Bassam Khalil, stated that Mrs. Tarter was doing very well, had no pain in her right foot, and did not need any bypasses at this point.  (Tr. 441).  On July 28, 2005, however, her ankle brachial index had declined to the point that it was considered to be "in the range of claudication."  (Tr. 558).

In November, 2005, the plaintiff began treatment with Dr. Joe Shy.  (Tr. 574).  He supplied office notes of four visits, the most recent of which was February 24, 2006.  (Tr. 583).  During most of these visits, he indicated that the plaintiff had no swelling of the lower extremities, although some mention was made of a burning sensation and diminished pulses.  (Tr. 574-83).  Dr. Shy's notes also suggest that the plaintiff was continuing to smoke against medical advice, and he also indicated on one occasion that she was not taking a medication which had helped the burning sensation.  (Tr. 580).  The plaintiff testified shortly thereafter at the administrative hearing that she had essentially given up smoking, having smoked only one pack in the past seven months.  (Tr. 660).

The most recent medical report was from Dr. Gary F. Earle, a colleague of Dr. Khalil, who followed up with the plaintiff on April 28, 2006.  (Tr. 588).  He stated

that she was having no difficulties with symptoms at the present time, although she was known to have arterial insufficiency of the right leg, and a peripheral vascular resistance study the same day continued to show moderate insufficiency in the right leg.  (Tr. 588-9).

In terms of functional restrictions, Dr. Shy submitted an assessment dated February 23, 2006 which limited Mrs. Tarter to less than full-time sitting and standing, with additional restrictions on postural activities, and working at unprotected heights and around heat, cold, and temperature changes, as well as a restriction on operating foot controls.  (Tr. 584-6).  He commented that, based on his review of the records and physical findings, "it is unlikely patient will be able to perform full-time work schedule."  (Tr. 586).

Another source, Dr. Joseph Weigel, who had treated the plaintiff briefly in 2004 (Tr. 248), at first indicated that he could not comment on the plaintiff's possible long-term disability (Tr. 259), but later, in November, 2004, without a further examination, limited Mrs. Tarter to less than full-time sitting or standing, similar postural limitations, noted that she needed to avoid exposure to heat, cold, humidity and temperature changes, and could not use her feet for repetitive movements  (Tr. 288-90).

A non-examining state agency physician, Dr. P. Saranga, had reviewed the evidence at an even earlier date, and opined on May 14, 2004 that the plaintiff would be limited to "light" level exertion, standing or walking at least two hours in an

07-175  Tarter

eight-hour day, sitting six hours, occasionally climbing ramps and stairs and crawling, and needed to avoid concentrated exposure to extreme cold, heat, and vibration.  (Tr. 496-503).

Therefore, it is clear that all sources, whether examining or non-examining, who expressed an opinion, limited the plaintiff to a greater degree than found by the ALJ.

Regarding Dr. Weigel, the ALJ stated that following the amputation, Dr. Weigel had opined that once the wound had healed Mrs. Tarter should be able to perform all work-related duties.  (Tr. 23).  As the plaintiff notes, it appears that this opinion was actually given by the podiatrist who performed the amputation, Dr. Pamela Jensen.  (Tr. 397).[2]  The ALJ did not cite any other reason for discounting Dr. Weigel's opinion.  The ALJ also rejected Dr. Shy's restrictions, saying that they were not supported by objective evidence, including Dr. Shy's own treatment notes, and were contradicted by Mrs. Tarter's testimony regarding her daily activities.  (Tr. 23).[3]  The ALJ concluded that the "overall record" was "more consistent" with Dr.

_____

[2]After Dr. Jensen gave this opinion, which included a warning that there was a "high risk of reoccurence resulting in gangrene" (Tr. 397), she was readmitted for a further operative procedure due to cellulitis (Tr. 276-7).

[3]No mention is made of Dr. Shy's indication that he had considered previous treatment records in reaching his conclusions.  (Tr. 586).  Even if his recent treatment notes did not contain dramatic findings, it is not implausible that a person with an amputated toe and arterial insufficiency could have many or all of the non-exertional restrictions listed by Dr. Shy.  The ALJ's decision does not even address this possibility.  See Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004) (an

07-175  Tarter

Saranga's assessment.  (Tr. 24).  The ALJ stated that the plaintiff had a limited ability to lift and carry heavy objects and stand and walk for long periods of time, but was able to lift and carry lighter objects, stand and walk for short periods of time, and sit for most of the workday.  (Id.).

Even assuming that the ALJ was justified in refusing to accept the opinions of these sources, the language of the ALJ's conclusion indicates that she believed the plaintiff was limited in her ability to stand and walk.  However, no specific standing and walking limitations were provided in the hypothetical question.  The definition of "light" level work presumes that the person will be able to stand and walk for more than the two hours in an eight-hour day assessed by Saranga.[4]  This is inconsistent with the hypothetical question, and the error cannot be considered harmless, since it is clearly more standing and walking than permitted by either of the examining source assessments or by the state agency reviewer.  Moreover, the jobs described by the ALJ in response to the hypothetical question were retail sales clerk, cashier, counter clerk, and stock clerk.  (Tr. 662).  It is difficult to envision very

ALJ must give "good reasons . . . for the weight . . .give[n]" to the opinion of a treating source).

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light [the claimant] must have the ability to do substantially all of these activities."  20 C.F.R. Section 404.1567(b).

12

07-175  Tarter

many of these positions being performed primarily in a seated position.[5] Consequently, the Commissioner has not carried his burden of showing the existence of jobs in the economy which the plaintiff can perform.

The plaintiff has also submitted additional materials to the Appeals Council, and while it is not a part of this court's substantial evidence review, it can be considered along with other new evidence on remand.

The decision will be remanded for further consideration.

This the 11th day of March, 2008.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**

---

[5]The sources also noted a need to avoid exposure to heat and cold.  Social Security Ruling 85-15 does not specifically address the vocational limitations concerning exposure to temperature extremes other than to say that "where [an] environmental restriction falls between very little and excessive," consultation of occupational reference materials or a VE will generally be required.  Id., p. 8.

13